UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Xavier L. McCoy, # 234419, | ) C/A No. 4:10-1687-JFA-TER |
| Plaintiff, | ) |
| vs. | ) REPORT AND RECOMMENDATION |
| Mr. Lt. Meredith; | ) |
| Mr. Capt. Miller, and | ) |
| Ms. Dr. Parker; Individually Capacities and in they Official Capacities, | ) |
| Defendants. | ) |

The Plaintiff, Xavier McCoy, filed this action on July 2, 2010, alleging various claims for violations of his constitutional rights pursuant to 42 U.S.C. § 1983.[1] At all times relevant to the allegations in the Plaintiff's complaint, he was incarcerated within Perry Correctional Institution (PCI). The Plaintiff is an inmate currently housed at the McCormick Correctional Institution ("MCI"). Before the undersigned is the Defendants' motion for summary judgment.

On December 22, 2010, Defendants filed a motion for summary judgment along with a memorandum and exhibits in support thereof. (Doc. #65). Because Plaintiff is proceeding pro se, he was advised on or about December 29, 2010, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), of the procedure for summary judgment and the possible consequences if he failed to respond adequately. On January 18, 2011, Plaintiff filed a response in opposition. (Doc. #73). On January 20, 2011, Defendants filed a reply to Plaintiff's response. (Doc. #74). On February 4, 2011, Plaintiff filed a sur reply. (Doc. #80).

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

## II.  DISCUSSION

### A.  STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court  assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th

Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### B. ARGUMENT OF PARTIES/ANALYSIS

The Plaintiff alleges violations with regard to the conditions of confinement while housed at PCI. Specifically, Plaintiff alleges that he was improperly denied a shower on January 1 and January 14, 2008, which caused him to develop a rash. Further, Plaintiff alleges he did not receive proper medical treatment for said rash. Plaintiff seeks monetary damages.

Defendants filed a motion for summary judgment asserting this action should be dismissed. Defendants submitted the affidavit of Alvin Meredith (Meredith) who attests that he is a former employee of the South Carolina Department of Corrections ("SCDC") where he was a Lieutenant at the PCI. (Meredith's affidavit, Doc. #65-5). Meredith left his employment with the SCDC in January 2010. (Id.). While at PCI, Meredith asserts he was assigned to the Special Management Unit (SMU) which is the most secure area at the prison used to house inmates who present a higher security risk at a higher security level and inmates are generally placed there due to some type of disruptive or violent behavior or disciplinary violations within the Institution. (Id.). The inmates housed in the SMU are allowed to shower three (3) times per week on Monday, Wednesday, and Friday.(Id.). There are SCDC policies with regard to inmate

grooming standards which state that inmates will have the opportunity to shower (3) times per week, but does not guarantee the right to shower as the opportunity to shower is contingent upon behavioral and/or medical exceptions. (Id.). An inmate would be allowed to shower on the designated days unless there was some type of medical reason, inappropriate behavioral issues, or the inmate was on Crisis Intervention. (Id.). When being escorted to the shower, the inmate is required to be handcuffed behind his back prior to exiting his cell. Once escorted to the shower and secured inside, the handcuffs would be removed. (Id.). Meredith attests that he vaguely recalls Plaintiff but does not recall an incident where he was not allowed to shower in January 2008 as alleged by Plaintiff. (Id.). Even if Plaintiff was not taken to the shower, there was a sink in his cell and he would have had a washcloth, towel, and soap in his cell where he could have washed himself even if not taken to the shower. (Id.). Meredith attests that he did not have any direct involvement in the medical care and treatment of the inmates including Plaintiff, he does not recall receiving any inmate requests or correspondence from the Plaintiff regarding his medical care, and he relied on the medical providers at PCI to provide proper medical care for all inmates. (Id.). Meredith attests that at no time did he intentionally take any action to deny Plaintiff his proper medical care, did not interfere with the medical care or treatment, and did not knowingly violate any constitutional rights of which he was aware. (Id.).

Defendants submitted the affidavit of Vernon Miller ("Miller") who attests that he is employed with the SCDC as Captain at the PCI. (Miller affidavit, Doc. #65-3). As Captain, Miller handles a variety of issues throughout the entire prison and is charged with broad supervisory responsibilities at PCI. (Id.). Plaintiff was housed in the SMU while at PCI which is the most secure area at the prison and used to house inmates who present a higher security risk at a higher security level. (Id.). Inmates in the SMU are allowed to shower three times per week, on Monday, Wednesday, and Friday which complies with SCDC Policies pertaining to inmate grooming standards. (Id.). These policies do not guarantee the right to shower as the opportunity to shower is contingent upon behavioral and/or medical exceptions.(Id.). Inmates are required to be handcuffed behind their backs prior to exiting their cell and the handcuffs are removed once the inmate

4

is secure inside the shower. (Id.). Miller attests that he recalls Plaintiff but does not recall an incident where Plaintiff was not allowed to shower in January 2008, but he does not generally escort inmates to the shower which is a task performed by other officers. (Id.). Miller attests that if Plaintiff was denied a shower, it would have been due to a behavioral problem or medical reason. (Id.). Plaintiff had a sink in his cell with a washcloth, towel and soap where he could have washed himself if he was not taken to the shower. (Id.). Miller attests that he did not have any direct involvement in the medical care and treatment of inmates including Plaintiff, does not recall receiving any inmate requests or correspondence concerning Plaintiff's medical care, relied on the medical providers at PCI to provide proper care for all inmates, does not become involved in medical decisions, and decisions as to what medical care is appropriate.(Id.). Miller attests that he did not intentionally take any action to deny Plaintiff proper medical care or knowingly violate any constitutional right of which he was aware.(Id.).

Defendants submitted the affidavit of Dr. Sonny Park[2] who attests he was formerly employed as a physician with the SCDC where he primarily saw patients at PCI along with other institutions until September 2009 when he left his employment with SCDC. (Park affidavit). Park asserts he is a licensed general practitioner, has been practicing medicine for six years, and is board certified in the area of Family Medicine. (Id.). Park asserts he recalls Plaintiff, he saw Plaintiff on several occasions while at PCI, and he has reviewed Plaintiff's medical records. (Id.). Park saw Plaintiff on January 16, 2008, for right-sided chest/abdominal pain and a rash in his groin area, but he did not see any indication in reviewing the medical records where Plaintiff complained of a rash in his groin prior to January 16, 2008. (Id.). The medical records reveal Plaintiff had CT scans of the chest and abdomen/pelvis which were both normal, he had a colonoscopy and EGD which were both normal, and laboratory tests requested by a gastroenterologist which were also normal. (Id.). Plaintiff requested that the tests be repeated due to continued complaints of pain.

---

[2] It is noted that his name is listed as Dr. Parker in the caption of Plaintiff's complaint.

(Id.). Plaintiff was upset when Park informed him that there tests would not be conducted again and it was not medically necessary to perform the tests a second time. (Id.). At the same appointment, Plaintiff complained about a rash which he alleged was caused by not being allowed to shower. (Id.). The rash appeared to be a fungal rash and Park determined no treatment was necessary at that time. (Id.). Based on the medical records, Plaintiff was not seen again by Dr. Park after January 16, 2008. (Id.). Plaintiff was transferred from PCI to McCormick Correctional Institution in February 2008. (Id.). Although Parks did not see Plaintiff after January 16, 2008, he was seen by medical personnel on several occasions at PCI before Plaintiff was transferred to McCormick, but there is no indication he made any additional complaints concerning the rash on his groin area.(Id.). Park attests that based on a review of Plaintiff's medical records, he made complaints about a rash to his facial and neck area in August 2008, but did not make complaints about a rash in the groin area again until October 5, 2009. (Id.). In his medical opinion, Park did not think medication was necessary for Plaintiff's rash when he saw him on January 16, 2008, and there is no indication in the medical records that Plaintiff made any additional complaints to medical at PCI after Park saw him on January 16, 2008, with relation to the rash. (Id.). If Park had been informed that Plaintiff was having additional problems, he would have seen him and provided appropriate medical care. (Id.). Park has not seen or been involved in Plaintiff's medical care since he was transferred to McCormick. (Id.). Park attests that he had no knowledge of whether Plaintiff received a shower on January 1, 2008, or January 14, 2008, and had no control or involvement of any kind with when Plaintiff received a shower on those dates. (Id.). In his medical opinion, Park attests that not having a shower on January 1, 2008, and January 14, 2008, as alleged by Plaintiff, would not cause him to develop a rash because his rash was a result of a fungus. (Id.). Park attests that though it is his opinion that the lack of a shower would not have caused or contributed to the Plaintiff's rash, he would note that Plaintiff could have cleaned himself sufficiently in the sink in his cell even if he was not provided a shower. (Id.). Park attests Plaintiff was provided appropriate medical care while at PCI, he did not intentionally take any action to deny Plaintiff proper medical care, at no time was

6

he deliberately indifferent to the serious medical needs of the Plaintiff, and at no time did he violate any clearly established constitutional right of the Plaintiff of which he is aware. (Id.).

Defendants submitted the affidavit of Nadine Pridgen ("Pridgen") who attests she is employed in the Division of Health Information Resources at the SCDC. (Pridgen affidavit, Doc. #65-6). As part of her duties and responsibilities, she obtained Plaintiff's medical records which sets forth his care and treatment at the SCDC from the time of his incarceration until the present. Pridgen attached a copy of said medical records. (Id.).

### C. DISCUSSION

Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. Conditions must rise to the level of a deprivation of a basic human need such as food, warmth, or exercise. Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991). In addition, prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The Court of Appeals for the Fourth Circuit considered the case of Strickler v. Waters, 989 F.2d 1375 (4th Cir. 1993). The Court in Strickler said that an inmate complaining about prison conditions must show that the challenged conditions resulted in a serious deprivation of a basic human need which, in turn, resulted in serious or significant physical or mental harm. While any of these conditions standing alone may not constitute cruel and unusual punishment, they may constitute an Eighth Amendment violation if considered in aggregate, McElveen v. County of Prince William, 725 F.2d 954 (4th Cir.), cert. denied, 469 U.S. 819 (1984). However, to be considered in aggregate, conditions must have mutually enforcing effects that produce a deprivation of a single, identifiable need such as food, warmth, or exercise. Wilson v. Seiter, 501 U.S. 294 (1991). The Plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the Defendants. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S.949 (1993)). Plaintiff has failed to prove that he was deprived a "basic need" and that this

7

deprivation was attended by deliberate indifference on the part of the Defendants. Strickler, supra. Plaintiff's assertion that he was denied a shower on January 1, 2008, and January 14, 2008, does not rise to the level of a constitutional violation. Plaintiff alleges he was denied a shower on two occasions which caused him to develop a rash on his groin. As stated above, Miller, Meredith, and Parker noted that Plaintiff had a sink, washcloth, soap and a towel in his cell where he could have washed himself if not allowed to take a shower. However, Plaintiff stated in his response to the motion for summary judgment that his sink was broken so he could not use it during that time. (Docs. #73 and #80). Regardless, Dr. Park submitted his affidavit in which he averred that, in his medical opinion, the rash was not caused by the failure to shower on two separate occasions as it was caused by a fungus. (Park affidavit). The Fourth Circuit Court of Appeals has held that deprivation of two showers on separate days did not amount to a claim of cruel and unusual punishment under the Eighth Amendment. Langston v. Fleming, 1994 WL 560765 (4th Cir. 1994) *citing* Davenport v. DeRobertis, 844 F.2d 1310, 1316-17 (7th Cir.) (One shower per week for inmates in administrative segregation does not violate Eighth Amendment), *cert. denied*, 488 U.S. 908 (1988). Based on the evidence, Plaintiff's claim as to denial of a shower on two separate occasions should be dismissed as he has not shown he was denied a basic human need which, in turn, resulted in serious or significant physical or emotional harm. Strickler, supra.

Further, Plaintiff has asserted a claim of medical indifference with regard to his rash on the groin area. In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying

8

>or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

>. . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the Defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir.

9

1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

First, any allegations of medical indifference as to Defendants Meredith and Miller should be dismissed as they are not medical personnel and Plaintiff has not shown that they interfered with Plaintiff's medical care. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved

10

with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Id. Under these principles, the Plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against Defendants Meredith and Miller who are non-medical personnel.

The Plaintiff has failed to show that he was denied medical treatment. Although Plaintiff alleges in his complaint that he was not treated for his rash, he was examined by Dr. Park on January 16, 2008, who determined in his professional opinion that Plaintiff did not need any medication or further medical treatment. Further, there is no indication in the medical records that Plaintiff complained of a rash again until October 2009. As held in Estelle, 429 U.S. at 107, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even if Plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Plaintiff has not put forth any allegation or evidence that he received anything other that de minimis injury. Additionally, Plaintiff has failed to show that he had a serious medical need of which Defendants knew about and consciously ignored. Plaintiff has not shown that any conduct by these Defendants "shocks the conscious" as required by Miltier v. Beorn, supra. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, supra. The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. Brown v. Thompson, supra. Any disagreement between an inmate and medical personnel generally fails to state a claim. Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action. Russell v.Sheffer, supra.

Based on the evidence presented, there has been no deliberate indifference shown to the overall

medical needs of the Plaintiff. For the above stated reasons, summary judgment should be granted in favor of Defendants on this issue.

### D. QUALIFIED IMMUNITY

Defendants argue they are entitled to qualified immunity. Although the burden of showing immunity remains on the Defendant, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation. When a Defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the Defendant and the burden of proving entitlement to immunity rests with the Defendant asserting it. Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the Defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not

12

>violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

>Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Thus, the undersigned recommends that summary judgment be granted as to these Defendants.

### E. ELEVENTH AMENDMENT IMMUNITY

The Defendants contend that the Plaintiff's §1983 claims them for money damages in their official capacity are barred pursuant to Eleventh Amendment Immunity. Defendants also argue that the action against them should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as an employee of the SCDC they are not a "person" under 42 U.S.C. §1983 and, therefore, not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party

being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that Defendants were/are employees of the SCDC at the time of the allegations in the complaint. Thus, they are entitled to Eleventh Amendment immunity from monetary damages in their official capacity.

### F. PENDENT JURISDICTION

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this

Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

### III.  CONCLUSION

The Plaintiff has failed to show that Defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983.  It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by Defendants (document #65) for summary judgment be GRANTED IN ITS ENTIRETY and the case dismissed.

IT IS FURTHER RECOMMENDED that all outstanding motions be deemed MOOT.

    Respectfully submitted,

    s/Thomas E. Rogers, III
    Thomas E. Rogers, III
    United States Magistrate Judge

March 30, 2011
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**